UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**MARGOT ELIZABETH LUCKMAN**,<br><br>Debtor.<br><br><br>**SCOTT L HART** and<br>**KENNETH R DYRUD**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**MARGOT ELIZABETH LUCKMAN**,<br><br>Defendant. | Case No.  **12-60036-13**<br><br><br><br><br><br><br><br>Adv No.  **12-00013** |

**MEMORANDUM OF DECISION**

At Butte in said District this 26th day of December, 2012.

In this adversary proceeding the Plaintiffs Scott L. Hart ("Hart"), who is the former spouse of the Debtor/Defendant Margot Elizabeth Luckman ("Debtor" or "Margot"), and Hart's attorney in the marital dissolution case, Kenneth R. Dyrud ("Dyrud"), seek exception from Debtor's discharge of $78,607.96 in attorney fees awarded by the state court, as a "domestic support obligation" under 11 U.S.C. § 523(a)(5). Defendant disputes that the debt is a domestic support obligation under § 523(a)(5), and she argues that Hart did not object to her Chapter 13

1

Plan which was confirmed and therefore binds the Plaintiffs, and that Hart filed two (2) proofs of claim asserting the debt as an unsecured, nonpriority claim. The parties have submitted this adversary proceeding on stipulated facts and briefs, which have been reviewed by the Court along with applicable law. This matter is ready for decision. For the reasons set forth below, a separate Judgment shall be entered against the Debtor excepting the $78,607.96 debt owed to Plaintiffs from her discharge under § 523(a)(5).

Plaintiffs are represented by attorney Daniel S. Morgan of Missoula, Montana. Debtor is represented by attorney Nik G. Geranios of Missoula.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b). Plaintiff's amended complaint seeking exception from Debtor's discharge under § 523(a)(5) is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Memorandum of Decision includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. Rule 7052 (applying Fed. R. Civ. P. 52 in adversary proceedings).

## BACKGROUND FACTS & PROCEDURAL HISTORY

Margot Elizabeth Luckman and Hart were married until their marriage was dissolved by a Montana state district court in 1993.

Margot filed her voluntary Chapter 13 petition on January 13, 2012, along with her Schedules and Statement of Financial Affairs. She also filed a Statement of Domestic Support Obligation (Docket No. 8 in Case No. 12-60036), which she signed under penalty of perjury, which answers "Yes" to the question: "Does Debtor have a domestic support obligation[?]" The Statement identifies the domestic support obligation order as having been issued in Case No. DR-93-77700 by the district court, Missoula County, Montana. It names Scott L. Hart c/o Ken

Dyrud as the holder of the claim of support, but does not state any amount for the support obligation.  Schedule F lists Dyrud as a creditor holding an unsecured nonpriority claim in the amount of $78,607.96 described as "attorney fees," but not marked as contingent, unliquidated or disputed.  The notice of commencement of the case was sent to Plaintiffs by first class mail on January 15, 2012, giving them notice of the deadlines to file proofs of claim (May 2, 2012) and a dischargeability complaint (April 2, 2012).

Margot filed a chapter 13 plan.  The certificate of service filed with the original plan shows that it was served on Hart c/o Dyrud and on Dyrud.  After the Chapter 13 Trustee filed objections to confirmation Margot filed an amended Plan[1], which also was served on Hart and Dyrud.  No objections to confirmation were filed.  The Chapter 13 Trustee filed a consent, and Debtor's amended Plan was confirmed without hearing on February 27, 2012.

The confirmed Plan proposes payments to the Trustee for 60 months.  It lists "None" at paragraph 2(d) on page 3 labeled payment to "Domestic Support Obligations" which shall be paid in full under the Plan.  Significantly, nothing in the confirmed Plan states specifically, and nothing in the Plan gives notice or rise to an implication, that Hart/Dyrud's claim would be discharged.  Paragraph 2(g) "LIQUIDATION ANALYSIS" states the total amount distributed to unsecured claims will be at least $6,756.00.

Paragraph 9 provides in pertinent part:

EFFECTS OF CONFIRMATION: Upon confirmation of this plan, all issues that have been or could have been decided involving any creditors are *res judicata*, and Debtor reserves all rights under applicable federal and state rights with regard to those issues ....

---

[1] Dkt. 16 in Case No. 12-60036-13.

3

After confirmation, Plaintiffs timely filed their complaint initiating this adversary proceeding on April 2, 2012, seeking exception from Debtor's discharge. Plaintiffs filed an amended complaint seeking exception from Debtor's discharge of the $78,607.96 in attorney fees, plus interest and costs of collection, under § 523(a)(5) as in the nature of child support.

On May 2, 2012, Hart timely filed Proofs of Claim Nos. 6 and 7. Claim 6 asserts the $78,609.96 claim and states the basis as "fees in domestic obligation case." It also has a statement of interest and a copy of the entry of amended judgment in DR-93-77700. Claim 6 does not assert priority status as a domestic support obligation under 11 U.S.C. § 507 at paragraph 5. Claim 7 is a claim in an unspecified amount based on "tort/personal injury" and also does not assert priority. A statement of interest and copy of the entry of amended judgment in DR-93-77700 are attached to Claim 7. No objections have been filed to allowance of Claims 6 or 7.

The "Request for Judicial Notice and Joint Stipulation of Facts" filed by the parties on October 18, 2012 (Dkt. 26) provides as follows:

> 1. Exhibit 1 is a true and correct copy of the decision by the Montana Supreme Court in the underlying state court action *In re Marriage of Hart*, DA-10-0192, 2011 MT 102 ¶4.
>
> 2. Exhibit 2 is a true and correct copy of the Property Settlement Agreement.
>
> 3. Exhibit 3 is a true and correct copy of the Final Order from the District Court on remand.
>
> 4. Pleadings, orders, and other papers on file in the underlying state court case and the instant bankruptcy case are also subject to judicial notice. *See Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987) (taking notice of same).

4

5. Either party may include additional documents from the underlying state court action or the instant bankruptcy case by attaching a true and complete copy to its brief.

As far as the Stipulated Facts in this case, undersigned counsel submit the following facts for determination of this matter:

1. Plaintiff Scott Hart is the ex-husband of Debtor Margot Luckman in this Chapter 13 case. Scott Hart is married to Taryn Hart, who is an attorney. Defendant Margot Luckman is the Debtor in this Chapter 13 case. Dyrud Law Offices, P.C. and Kenneth Dyrud, was Plaintiff's counsel in the underlying state court action.

2. Scott and Margot divorced in May 1993 and entered into a Marital and Property Settlement Agreement (hereinafter "Settlement Agreement") before the District Court.

3. Pursuant to the Settlement Agreement, Margot and Scott's two children would live primarily with Margot and Scott would pay Margot child support payments of $150 (later $200) per month plus half the cost of the children's uninsured medical expenses. *In re Marriage of Hart*, DA-10-0192, 2011 MT 102 ¶4.

4. In October 2000, Scott filed a Motion to Amend the Parenting Plan to reflect changes in the children's residency arrangements. In her response brief to Scott's motion, Margot set forth the statutory criteria to determine the best interests of the child and, in doing so, made the statement that "[t]here is no issue of Scott's having failed to pay child support." *Id* at ¶5. 5. Following a contested hearing, each party submitted proposed findings of fact and conclusions of law. *Id.* Margot again made the statement in Proposed Finding No. 40 that Scott was current with his child support obligations, but the court did not ultimately adopt this finding. *Id.* In December 2001, the District Court granted Scott's motion as to the residency arrangement of the children; it did not modify child or medical support obligations. *Id.*

6. In March 2003, Scott suffered a catastrophic injury for which he received social security disability benefits. *Id* at ¶6. In February 2008, as a result of Scott's injury, Margot received a lump-sum social security payment of $8,097 for each child, and she began receiving dependent's benefits of $274 per month for each child. *Id.*

7. On or around June 9, 2008, Margot Luckman filed an action in Montana's Fourth Judicial District Court (Cause No.DR-93-77700), seeking back

child support and medical support which she believed was owed to her. *Id.* at ¶7.

8. On July 31, 2008, Scott filed his response, disputing Margot's claims and arguing that Margot's statements regarding back child support were contradictory to earlier statements made under oath and otherwise. *Id.*

9. On October 1, 2009, the court held a hearing in which it received testimony from Margot and Nicholas L. Bordeau, an expert in child support determination hired by Scott. *Id.* Mr. Bordeau opined that Margot was overpaid by at least $3,230.12 for the child support, accrued interest, and medical expenses obligations of Scott for the period of September 25, 2001, to March 26, 2003, regardless of whether the payments were applied first to principal and then to interest, or vice versa. *Id.*

10. The parties agreed that the lump-sum payment should be applied to Scott's outstanding child and medical support obligations; however, the parties disagreed as to whether the lump-sum should be applied first to principal or to interest. *Id.* At that hearing, the court ordered that the lump-sum social security payment be applied first to principal and then to interest. *Id.*

11. Ultimately, the District Court found that Scott was current on child support obligations through September 25, 2001, because Margot admitted as much in what the District Court concluded were judicial admissions. *Id.* at ¶8.

12. Further, the court found that the lump-sum social security payment was an overpayment, regardless of whether it was applied first to principal or to interest, and therefore concluded that Scott was not in arrearage for past due child or medical support. *Id.*

13. Finally, the court awarded Scott attorney fees and costs as a sanction, because it concluded Margot's pleadings were inconsistent. *Id.*

14. Margot timely appealed these orders and prayed for attorney fees. *Id.* at ¶9. Scott cross-appealed the District Court's March 23, 2010 order and prayed for attorney fees. *Id.*

15. The Montana Supreme Court held that her statements constituted judicial admissions and the District Court did not err in concluding that Scott was current with his child support payments through September 2001. *Id.* at ¶18.

16. The Montana Supreme Court also held that the District Court did not err in concluding that Scott did not owe Margot for back child support. *Id.* at ¶25.

17. The Montana Supreme Court also analyzed the issue of the attorney fees awarded by the District Court as sanctions and held:

> "Though the parties presume in their arguments on appeal that the District Court awarded fees as sanctions pursuant to Rule 11, nowhere in its orders does the court clearly state under what authority it did so—Rule 11, M. R. Civ. P. 26(g) (discovery sanctions), § 37-61-421, MCA, its inherent authority, or otherwise. Without knowing the legal basis for the sanction, it is impossible to ascertain whether the award constituted an abuse of discretion. However, we conclude it is unnecessary to remand for a determination of the legal authority supporting the imposition of fees as sanctions, in light of our disposition of Issue Four (¶¶ 26-29), which resolves all outstanding questions regarding attorney fees. We therefore vacate the order of fees as a sanction.

*Id* at ¶21.

18. Scott argued on cross-appeal that he is clearly the prevailing party and is entitled to recover all his attorney fees and costs, including those on appeal, pursuant to the attorney fees provision in the Settlement Agreement. Id. at ¶27. The Montana Supreme Court held:

> the language of the Settlement Agreement is clear—Section VII states "in any action to enforce or interpret any provision of this agreement, the prevailing party shall receive costs and attorney's fees." Id at ¶29. Scott is clearly the prevailing party since the District Court determined not only that he was not in arrears on his child support obligation, but also that he had overpaid. Therefore, we conclude the District Court erred when it granted Scott only a portion of his attorney fees and costs as sanctions against Margot. By the terms of the Settlement Agreement, Scott should have been awarded all of his costs and attorney fees expended in defense of Margot's claims, as the prevailing party.

Id at ¶29.

19. The Montana Supreme Court concluded that:

For the foregoing reasons, we affirm in part and reverse in part and remand for further proceedings consistent with this Opinion. We affirm the District Court's conclusions that Margot's statements constituted judicial admissions and that Scott did not owe Margot

7

> back child support. We vacate the District Court's imposition of
> fees as sanctions. We deny Margot's request for fees and grant
> Scott's cross-appeal. We reverse and remand for a hearing to
> determine all fees incurred by Scott in response to Margot's June 9,
> 2008 motion to determine back child and medical support both in
> the District Court and on appeal. Scott shall not, however, recover
> those fees incurred in connection with his cross-motion to revise
> child support and for a new parenting plan.

Id at ¶30.

20. Subsequently, the parties attempted to negotiate a settlement of the amount Luckman owed to Hart, but were unsuccessful. Ms. Luckman was unable to continue to fund a legal dispute over the amount and appropriateness of the fees and costs asserted.

21. Scott Hart filed a motion for Award of Attorney Fees and Costs and Affidavit itemizing his claim for attorney's fees and costs, claiming a total amount of $78,607.96. Ms. Luckman did not respond and on December 7, 2011, the District Entered Judgment in the amount of $78,607.96.

The parties do not dispute that Ex. 3, the entry of judgment in DR-93-77700 against Margot in the amount of $78,607.96, is a final judgment. The state court final judgment and orders therefore have preclusive effect under the doctrine of issue preclusion. *U.S. v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008), quoting *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881(9th Cir.1997) (other citations omitted). Issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Bhatia*, 545 F.3d at 759, quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

## DISCUSSION

Defendant disputes that the debt owed to Plaintiffs is a domestic support oligation under § 523(a)(5). In addition she argues that Hart did not object to her Chapter 13 Plan which was

confirmed after notice and binds the Plaintiffs as having a dischargeable debt, and that Hart filed two (2) proofs of claim asserting their debts as unsecured, nonpriority claims. Margot contends that she was a dependent spouse and the award of attorney fees to Hart as prevailing party is not a genuine support obligation and not in the nature of support because he was never a dependent spouse of Margot. Rather, she argues, the award is in the nature of a property settlement and not entitle to priority. As a property settlement, Margot contends, Plaintiffs' claim is dischargeable under § 523(a)(15). She asks for her attorney fees and costs under 11 U.S.C. § 523(d)[2] in defending against Plaintiffs' nondischargeability claim.

Plaintiffs argue that their claim arises from attorney fees incurred in a dispute over child support under the Settlement Agreement, and Hart was awarded his attorney fees from having to defend against Margot's meritless claim. Plaintiffs cite *In re Manners*, 62 B.R. 656, 658-59 (Bankr. D. Mont. 1986), and cases cited therein, as support for their position that their claims for attorney fees are nondischargeable support. Plaintiffs argue that allowing discharge of their attorney fees would create perverse incentives to allow discharge of fees arising from defense of Margot's meritless child support claim, and encourage meritless litigation and make settlement impossible.

The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105,

---

[2]By the terms of its initial sentence § 523(d) is limited to "[i]f a creditor requests a determination of dischargeability of consumer debt under subsection (a)(2) of this section ...." Debtor's claim for attorney fees must fail in any event based on this first sentence because neither the complaint nor the amended complaint requested dischargeability based on § 523(a)(2). The complaint requests exception from discharge under § 523(a)(5) and § 523(a)(6), the latter of which was dropped in the amended complaint. Plaintiffs never requested a determination of dischargeability under § 523(a)(2). Hence, § 523(d) cannot apply.

1107, 166 L.Ed.2d 956 (2007).  The "fresh start" is explained by the Ninth Circuit Bankruptcy Appellate Panel in *In re Albarran*, 347 B.R. 369, 379 (9th Cir. BAP 2006):

> The general policy of bankruptcy law favors allowing an honest debtor to discharge debts and to make a fresh start free from the burden of past indebtedness. *See Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Thus, because a debtor in bankruptcy is assumed to be poor but honest, there is a presumption that all debts are dischargeable unless a party who contends otherwise proves, with competent evidence, an exception to discharge. *See Brown v. Felsen*, 442 U.S. 127, 128-29, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL ¶ 301.60, p. 870 (2006 ed.).
>
> The corollary to this policy is that only the "honest but unfortunate" debtor is entitled to an entirely unencumbered fresh start. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Grogan v. Garner*, in further explaining the "fresh start" policy of the Bankruptcy Code, states that "a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)."  498 U.S. 279, 286, 111 S.Ct. 654, 659 112 L.Ed.2d 755 (1991).

**I. Domestic Support Obligation.**

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the Bankruptcy Code did not define the term "domestic support obligation." However, after enactment of BAPCPA, the term "domestic support obligation" was defined in 11 U.S.C. § 101(14A) as,

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title,

that is--

    (A) owed to or recoverable by--

        (I) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

        (ii) a governmental unit;

    (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

    (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

        (I) a separation agreement, divorce decree, or property settlement agreement;

        (ii) an order of a court of record; or

        (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

    (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Domestic support obligations, as that term is defined at § 101(14A), are non-dischargeable under § 523(a)(5) which provides that a discharge under 11 U.S.C. § 1328(b) does not discharge an individual from any debt . . . "(5) for a domestic support obligation." Section 1328(a)(2) governing discharge in a chapter 13 case repeats that after completion of plan payments a court shall grant the debtor a discharge of all debts provided for by the completed plan or disallowed under section 502 "except any debt – . . . (2) of the kind specified in . . .

11

paragraph . . . (5) . . . of section 523(a)."

Based on the final decisions by the Montana Supreme Court set forth above, this Court finds and concludes that the $78,607.96 judgment against Margot in Cause No. DR-93-77700 is a domestic support obligation of the Debtor as defined at § 101(14A). It is owed by Margot to a former spouse pursuant to the Settlement Agreement between the parties. The Court finds that it is in the nature of support because it was incurred in the course of litigating the child support obligations of the parties. It makes no difference who was the dependent spouse. As a domestic support obligation the $78,607.96 is excepted from the Debtor's discharge under the plain terms of § 523(a)(5).

The fact that Margot also owes the $78,607.96 to Hart's attorney and co-Plaintiff Dyrud does not impact the dischargeability of such fees, because direct payments to a third party, such as an attorney, may be deemed to be an obligation to the former spouse where it would elevate form over substance to fail to treat it as such. *In re Leibowitz,* 217 F.3d 799, 803 (9th Cir. 2000), quoting *In re Chang*, 163 F.3d 1138, 1141-42 (9th Cir.1998) ("We have held that a debt to third parties 'on behalf of a child or former spouse can be as much for ... support as payments made directly [to the former spouse or child].'") "The legal question is not whether repayment of the debt will benefit the children, but whether the basis of the debt benefitted the children." *Leibowitz*, 217 F.3d at 803; *Chang*, 163 F.3d at 1141 (holding that a debt for professional fees and expenses arising from child custody proceedings is "in the nature of support"). The child support provisions of the Settlement Agreement between Margot and Hart clearly benefitted the children, so the $78,607.96 in attorney fees incurred by Hart defending against Margot's child support claims is in the nature of support.

12

*Leibowitz* cites two provisions of the Social Security Act, 42 U.S.C. 653(p) and 42 U.S.C. § 659(i)(2) which provide that support or child support may include "arrearages or reimbursement." 217 F.3d at 803-04. The Ninth Circuit wrote: "These two provisions are strong evidence that a debt can qualify as "in the nature of support" even if the debt provides no current benefits to the child." 217 F.3d at 804.

In the instant case Plaintiffs' claim for attorney fees may not provide current benefits to the child, but it unquestionably is reimbursement ordered by the state court pursuant the provisions of the Marital and Property Settlement Agreement. The underlying dispute was unpaid child support. The award of attorney fees to Hart and Dyrud are therefore as much for support as payments made directly to the former spouse or child. *Leibowitz*, 217 F.3d at 803; *Chang*, 163 F.3d at 1141. This conclusion under the new § 523(a)(5) is consistent with this Court's longstanding rule. *See Manners*, 62 B.R. at 658, 659.

## II. Binding Effect of Confirmation.

Debtor argues that the terms of the confirmed Plan bind Plaintiffs because they did not object before confirmation, and because Hart filed Proofs of Claim which did not assert priority claims. Section § 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." In this district, ordinarily confirmation binds the debtor and each creditor, whether or not the claim has been provided for by the plan, and whether or not such creditor has objected to or has rejected the plan. 11 U.S.C. § 1327(a); *In re Quesnell* 18 Mont. B.R. 80, 89 (Bankr. D. Mont. 1999). The binding effect of confirmation gives res judicata effect to those issues that were decided, or could

13

have been decided at the time of confirmation. *In re Pierce Packing Company*, 13 Mont. B.R. 297, 307-08 (Bankr. D. Mont. 1994); *In re Kessner*, 10 Mont. B.R. 141, 142-43 (Bankr. D. Mont. 1991); *see also United States v. Edmonston*, 99 B.R. 995, 998 (E.D. Cal. 1989).

This Court confirmed Debtor's Plan on February 27, 2012. Plaintiffs had notice of the amended Plan and did not object. However, the provisions of the confirmed Plan cannot bind Plaintiffs with respect to the dischargeability of their claim because the Plan included no provision relating to discharge of their claim. Indeed, a proceeding to determine the dischargeability of a debt is an adversary proceeding governed by Part VII of the Federal Rules of Bankruptcy Procedure. Rule 7001(6). To attempt to determine dischargeability of debt in confirmation of a chapter 13 plan would violate Rule 7001(6).

The Debtor's Plan was confirmed prior to the deadline for filing dischargeability complaints and prior to the deadline for filing proofs of claim, both of which were fixed by the Court and notice given to the Plaintiffs. To bind Plaintiffs by confirmation of a plan which occurred prior to the expiration of deadlines fixed by the Court would deprive Plaintiffs of due process and penalize them for reliance on notices provided by the Court.

In *United Student Aid Funds, Inc. v. Espinosa*, __ U.S. __ 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010), the United States Supreme Court affirmed the Ninth Circuit decision which concluded that confirming a chapter 13 plan which discharged unpaid interest on student loan debt, without first finding undue hardship under 11 U.S.C. § 523(a)(8), was a legal error but notwithstanding was not a basis for setting aside a confirmation order as void under Rule 60(b). 130 S.Ct. at 1374-75. The Court noted that the creditor received actual notice of the filing and contents of a plan which provided for discharge of a student loan debt. *Id.* at 1374, 1378.

Although the Court found that the bankruptcy court's failure to determine dischargeability before confirming the debtor's plan was a legal error, the confirmation order remained enforceable and binding on the creditor because the creditor had notice of the error and failed to object or appeal. *Espinosa*, 130 S.Ct. at 1380.

The plan which was confirmed in *Espinosa* is distinguishable from Margot's confirmed Plan because *Espinosa*'s plan specifically provided that the remainder of student loan debt would be discharged. 130 S.Ct. at 1374. By contrast, Margot's confirmed Plan makes no provision for discharge of Plaintiffs' unpaid attorney's fees, nor does it provide otherwise for discharge of debt.

Discharge is provided under § 1328(a) for all debts provided for the by plan or disallowed under section 502, "except any debt – of the kind specified in section ... (5) ... of section 523.[3]" Because Margot's confirmed Plan made no provision for discharge of Plaintiffs' claims, their claims had not yet been filed at the time of confirmation, and the deadline for filing dischargeability complaints had not expired, this Court finds and concludes that Plaintiffs are not bound by confirmation of Debtor's Plan under § 1327(a). A provision in the Plan attempting to discharge Plaintiffs' claim by confirmation would have been improper procedure[4] since an

---

[3]Section 1328(a) further limits discharge "in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter ...." The meaning of this language is beyond the scope of this Memorandum of Decision, but clearly must be considered at the time a discharge is requested after completion of plan payments.

[4]The Supreme Court wrote in *Espinosa*: "As we stated in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed. 280 (1992), '[d]ebtors and their attorneys face penalties

adversary proceeding is required. Rule 7001(6). The Debtor did not initiate an adversary proceeding to determine dischargeability of Plaintiffs' claim under § 523(a)(5). Dischargeability of the Plaintiffs' claim is not provided for or implied in Debtor's confirmed Plan, and therefore Plaintiffs are not bound by confirmation.

Next, Debtor argues that Hart filed 2 Proofs of Claim which do not assert priority under 11 U.S.C. § 507(a)(1)(A). However, the deadline for filing proofs of claim had not occurred when her Plan was confirmed. Therefore, the priority status of Plaintiffs' claims was not at issue at the time of confirmation and could not have been litigated. Allowance of a priority claim under § 507(a) is by operation of that section and 11 U.S.C. § 502(a), and does not govern whether a claim is dischargeable as a domestic support obligation. Since there has been no objection to Plaintiffs' claims they are allowed under § 502(a), but whether the claims are dischargeable is the subject of a different statute, § 523(a)(5). Plaintiffs followed proper procedure by initiating an adversary proceeding under Rule 7001(6), and the fact that they did not claim priority status on their proofs of claim is not determinative of dischargeability[5].

**IT IS ORDERED** a separate Judgment shall be entered in conformity with the above against the Debtor/Defendant Margot Elizabeth Luckman in the amount of $78,607.96 plus accrued interest, in favor of the Plaintiffs Scott L. Hart and Kenneth R. Dyrud; and that award is

---

under various provisions for engaging in improper conduct in bankruptcy proceedings,' *id* at 644, 112 S.Ct. 1644; see Fed. Rule Bkrtcy. Proc. 9011. The specter of such penalties should deter bad-faith attempts to discharge student loan debt without the undue hardship finding Congress required."

[5]One may surmise that Plaintiffs, having seen that the confirmed Plan provides for payment of only $6,756 to unsecured claims, did not wish to expend resources litigating the priority of their claims and opted to concentrate instead on dischargeability.

excepted from the Defendant's discharge as a "domestic support obligation" under 11 U.S.C. § 523(a)(5).

BY THE COURT

/s/ Ralph B Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana